1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8
WESTERN DISTRICT OF WASHINGTON
9
AT TACOMA

10  JULIE A. LOEWEN,

11          Plaintiff,               CASE NO. 15-cv-05089 JRC

12     v.                            ORDER ON PLAINTIFF'S
                                     COMPLAINT
13  CAROLYN W. COLVIN, Acting
14  Commissioner of the Social Security
    Administration,
15
            Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19  Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States

20  Magistrate Judge, Dkt. 4. This matter has been fully briefed (*see* Dkt. 10, 16, 17).

21          After considering and reviewing the record, the Court concludes the determination

22  that plaintiff is not disabled was based on sound legal reasoning and well supported by

23  substantial evidence in the record.  The decision is affirmed.

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

BACKGROUND

Plaintiff, JULIE A. LOEWEN, was born in 1959 and was 49 years old on the alleged date of disability onset of January 1, 2008 (*see* AR. 21, 167-68). Plaintiff graduated from high school and has a 4-year degree in computer and business (AR. 51). Plaintiff has work experience as a substitute paraeducator (AR. 202-13).  Plaintiff's last employment was part-time with a school district testing children for reading and reading comprehension (AR. 52).  She was unable to complete the training for the new testing and was not called back to work (AR. 52).

According to the ALJ, plaintiff has at least the severe impairments of "bipolar disorder, depression, obesity (20 CFR 404.1520(c))" (AR. 23).

At the time of the hearing, plaintiff was going through a divorce and living alone in the home (AR. 50).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act were denied initially and following reconsideration (*see* AR. 72-80, 82-95). Plaintiff's requested hearing was held before Administrative Law Judge Cynthia D. Rosa ("the ALJ") on January 11, 2013 (*see* AR. 45-70). On March 1, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 18-44).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether the ALJ properly evaluated the medical evidence; (2) Whether the ALJ properly evaluated plaintiff's testimony; (3) Whether the ALJ properly evaluated the lay evidence; (4)

Whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC"); (5) Whether the ALJ erred by basing her step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations; and (6) Whether the new evidence that was submitted to the Appeals Council supports remand for a new hearing (*see* Dkt. 10, p. 2).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1)     Whether the ALJ properly evaluated the medical evidence.

Plaintiff contends the ALJ did not properly consider the medical evidence that shows her restless leg syndrome and migraines to be severe impairments (Dkt. 10, p. 3-8). According to the ALJ, plaintiff's restless leg syndrome was well controlled by medication and her migraines were diagnosed but not referenced as limitations on functioning (AR. 24). As a result, ALJ found plaintiff's restless leg syndrome and migraines medically determinable but not severe impairments (AR. 23-25).

Step two of the administration's evaluation process requires the ALJ to determine if the claimant "has a medically severe impairment or combination of impairments."

*Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting* Social Security Ruling "SSR" 85-28) (*citing Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims," when the disability evaluation process ends at step two. *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

When an ALJ fails to find an impairment severe, the error is not necessarily harmless just because the ALJ proceeds to subsequent steps in the sequential disability evaluation process. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The Ninth Circuit court concluded that an ALJ erred where the ALJ failed to find severe a claimant's panic disorder when the claimant described symptoms consistent with panic disorder to the ALJ at the administrative hearing. *See id.* The court found that because "the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnoses as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record." *See id.* This is precisely the type of error alleged by plaintiff in this case. She contends the failure to find her restless leg syndrome and migraine to be severe impairments affected the RFC assessment (Dkt. 17, p. 5).

According to plaintiff, the RFC did not fully account for all limitations related to her restless leg syndrome, including her inability to sleep, rest, and concentration (Dkt. 17, p. 5). However, substantial evidence in the record supports the ALJ's finding that restless leg syndrome was well controlled with medication (AR. 24).  Plaintiff had success with her medication for restless leg syndrome in February 2008 (AR. 286).  She appears to have experienced significant control through at least May 2011, when she reported that her medication continued to work well and denied any breakthrough symptoms (AR. 283).  By February 2012, plaintiff was experiencing increased restless leg symptoms and expressed difficulty getting to sleep and staying asleep (AR. 500). She attended a neurology appointment and received a sample of new medication (AR. 500). In April 2012, an evaluating physician noted she had historically good control of her restless leg syndrome, but recently experienced less control (AR. 419). Plaintiff's therapist noted in August and September 2012 that restless leg symptoms were keeping her awake and interfering with her mental state (AR. 533, 528).  However, by October 2012 her symptoms had diminished and this continued at least through November 2012 (AR. 525, 523).

As the record demonstrates, plaintiff had significant control of the symptoms of her restless leg syndrome for much of the alleged period of disability.  She experienced more symptomology in 2012, resulting in some interference with her mental state (AR. 533). However, the ALJ specifically noted that the RFC limitation to simple, routine, repetitive tasks in a predictable environment stemmed from plaintiff's mental health impairments and restless leg syndrome (AR. 25).  The ALJ, despite finding restless leg

syndrome non-severe, took possible concentration issues into consideration by limiting her to simple, routine, tasks.

Plaintiff's representative alleged the restless leg symptoms contributed to concentration issues rather than physical limitations (AR. 25, 66).  The ALJ accounted for possible concentration limitations in the RFC (AR. 25). Plaintiff does not articulate any additional limitations required by her restless leg syndrome. The Court declines to find that the ALJ failed to account for plaintiff's restless leg syndrome in some unspecified way. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 n. 2 (9th Cir. 2009).

The Court applies this same reasoning to plaintiff's claim that the RFC does not include limitations due to her migraines. Plaintiff alleges an incomplete RFC but fails to identify any limitations necessary to account for her migraines. Additionally, plaintiff's testimony is the only evidence of the symptoms, frequency and severity of her migraines (AR. 62). Plaintiff's testimony, as discussed below, was properly found not credible and, therefore, does not provide substantial evidence to support further restrictions in the RFC. *See Britton v. Colvin*, 787 F.3d 1011, 1014 (9th Cir. 2015) (medical evidence based on plaintiff's incredible testimony was not the substantial evidence necessary for including migraines in the examination of the vocational expert).

Regardless of whether plaintiff's migraines and restless leg syndrome rise to the level of severe impairments, plaintiff has shown no harmful error requiring reversal. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error applies in Social Security context when the mistake is non-prejudicial to the

claimant or irrelevant to the ultimate disability conclusion).  The ALJ identified other severe impairments to satisfy the de minimis requirements of step two of the disability determination (AR. 23).  In the RFC, the ALJ accounted for the impairment in concentration resulting from restless leg syndrome by restricting plaintiff to simple, routine tasks. Without credible evidence of additional limitations from restless leg syndrome and migraines, plaintiff cannot establish the need for further restrictions in the RFC.  The ALJ's evaluation and incorporation of the medical evidence is affirmed.

(2)     Whether the ALJ properly evaluated plaintiff's testimony.

Plaintiff testified that she has mood swings and difficulties with thinking and indecision (AR. 59-60). She lacks interest and often did not feel well (AR. 61). She gets distracted and has racing thoughts (AR. 61). She has a hard time with household chores, like laundry and dishes (AR. 62). She is easily overwhelmed and "can't hardly do anything" (AR. 64).  In her March 2012 function report, plaintiff stated she rarely drove or went outside (AR. 263). Instead, she spent most of the day watching television and sleeping (AR. 264).  She claimed to isolate and avoid contact with people (AR. 261).

The ALJ found plaintiff's testimony not completely credible (AR. 28).  According to the ALJ, plaintiff's testimony lacked credibility because it was not fully consistent with the treatment record, clinical observations and mental status examinations, or plaintiff's extensive activities.  (AR. 33). Plaintiff contends these are not specific, clear, and convincing reasons for discrediting her testimony (Dkt. 10, p. 14).

1    If the medical evidence in the record is not conclusive, sole responsibility for

2    resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v.*

3    *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855,

4    858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). The

5    ALJ's credibility determinations "must be supported by specific, cogent reasons."

6    *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v. Sullivan*, 947 F.2d

7    341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's credibility, the

8    ALJ cannot rely on general findings, but "'must specifically identify what testimony is

9    credible and what evidence undermines the claimant's complaints.'"  *Greger v. Barnhart*,

10   464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169

11   F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted);

12   *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted).

13

14   Once a claimant produces medical evidence of an underlying impairment, the ALJ

15   may not discredit a claimant's testimony as to the severity of symptoms based solely on a

16   lack of objective medical evidence to corroborate fully the alleged severity of pain.

17   *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton,*

18   *supra*, 799 F.2d at 1407); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 at *2,

19   1996 SSR LEXIS 4 at *3 (this Ruling emphasizes that a claimant's "statements about the

20   intensity and persistence of pain or other symptoms or about the effect the symptoms

21   have on his or her ability to work may not be disregarded solely because they are not

22   substantiated by objective medical evidence").  If an ALJ rejects the testimony of a

23   claimant once an underlying impairment has been established, the ALJ must support the

24

rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, *supra*, at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Reddick, supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47).  As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

Here, the ALJ found plaintiff's allegations of disabling mental limitations were inconsistent with the longitudinal record "which shows some waxing and waning of mental health symptoms, but largely good functioning when on the right combination of medications, exercise, and therapy" (AR. 28).  Substantial evidence in the record supports this finding.  Plaintiff's mental health treatment history shows general clinical stability, except for a few periods of elevated symptoms and one episode of decompensation.

Plaintiff alleged disability beginning January 1, 2008 (AR. 72). In December 2007 she began seeing Kathryn Johansen, MN, ARNP (AR. 571).  At her initial appointment she presented with psychomotor slowing, blunted and labile affect (AR. 571). She was distractible and had poor concentration and somewhat abnormal short- term memory (AR. 571). Ms. Johansen began adjusting her psychiatric medications (AR. 567).  During a July 2008 appointment, plaintiff reported feeling a little better (AR. 339). Her memory was "not good" but she was riding a bicycle for exercise (AR. 339). By November 2008 plaintiff was doing well and felt her medication was working (AR. 337).  She had more energy and motivation and her memory was improved (AR. 337). She was able to read

and was thinking about volunteering (AR. 337).  This stability continued in January 2009 when she felt a little better and could joke around a bit more (AR. 337).  In February 2009, plaintiff continued to feel better and planned to return to volunteering with the school district (AR. 336).  She was clinically stable with improved concentration in April 2009 (AR. 335).  Improvement continued through July 2009, when she had a bright affect and reported more energy and interest (AR. 334).  She went to Hawaii for vacation (AR. 334).  She was sleeping well and walking two to three times per week (AR. 334).

Plaintiff experienced an exacerbation of her symptoms in October 2009 (AR. 333). She reported to Ms. Johansen that her job for the school district had ended and she was bored and "going stir crazy" (AR. 333). She had some decompensation but her reading and concentration remained good (AR. 333).  These symptoms stabilized quickly, and by November 2009 plaintiff was feeling the positive benefits of light therapy and exercise (AR. 332). She told Ms. Johansen that she was walking three times per week and attending yoga twice per week (AR. 332).   Despite a stressful holiday season, plaintiff's mood was pretty good and she was stable in January 2010 (AR. 331).  But, on April 13, 2010, plaintiff reported she had experienced an up and down period (AR. 330).  Although Ms. Johansen considered her clinically stable, her memory was poor and she was a little delayed (AR. 330).  At that time plaintiff informed Ms. Johansen that she was returning to work for thirty hours per week (AR. 330).  In June 2010 plaintiff "had a bit of a breakdown" due to family issues (AR. 327). She had decompensated but Ms. Johansen still considered her clinically stable (AR. 327).

By October 2010, plaintiff was feeling much better, doing yoga and walking, and had lost weight (AR. 325).  In December 2010, plaintiff was clinically stable and continued yoga two days per week and walking three days per week (AR. 324). However, she was a little more depressed and dealing with family issues (AR. 324).  Her symptoms continued to increase through February 2011 with more depression, slower thinking, and poor memory (AR. 323).  A change in medication yielded improvement by March, when plaintiff was feeling better, thinking more quickly, attending yoga, volunteering, and sleeping very well (AR. 322).  This stability continued through May, when plaintiff had more energy and bright affect (AR. 321). She was quicker to smile and less delayed but reported an increase in racing thoughts (AR. 321).

During an appointment with Ms. Johansen on August 4, 2011, plaintiff showed signs of a hypomanic episode (AR. 320). Ms. Johansen made several medication changes to address the symptoms (AR. 317-320). With changes to her medication, plaintiff was improved and clinically stable by late September 2011 (AR. 314).  She continued to be clinically stable, but with little energy and increased depression through March 2012 (AR. 422-23).  Ms. Johansen made more adjustments in medication and in July 2012 plaintiff reported being more active and alert (AR. 560). She was working on stained glass and had gone through old pictures (AR. 560).

In August 2012, plaintiff experienced significant decompensation (AR. 554-56). Ms. Johansen suspected plaintiff had not been taking her medication (AR. 554).  Plaintiff showed mania and possible psychosis. Hospitalization was recommended but refused (AR. 555). The police were dispatched to plaintiff's home for a welfare check (AR. 555).

Soon after, plaintiff's husband left her and she terminated her therapeutic relationship with Ms. Johansen (AR. 553, 528).

The crisis was resolved and plaintiff began improving in September 2012 (AR. 528).  She was seeing a new therapist, Barry Anton, Ph.D., and responding to medication (AR. 528). She was upset her husband had left her (AR. 528). Her speech was pressured, she had trouble tracking at times, and lost her train of thought (AR. 528). However, Dr. Anton noted that her memory was intact and her attention and concentration were fair (AR. 528).  Plaintiff was significantly improved in October 2012. She reported volunteering for activities and attending a divorce group (AR. 524-25). She took walks and had dinner with a friend (AR. 524-25). She remained sad that her husband had left, but she showed good memory, attention, and concentration (AR. 524-25). She presented similarly at appointments with Dr. Anton through November 2012 (AR. 523).

This mental health history, and more, was described at length by the ALJ (AR. 28-32).  Plaintiff contends the ALJ engaged in selective analysis of the medical evidence by failing to discuss the clinical findings supporting her allegations of disabling mental impairments (Dkt. 17, p. 7). But, the written decision belies this claim.  The ALJ gave a thorough review of the medical record. The ALJ's examination of the record included the times of increased symptomology (AR. 28-31). In particular, the ALJ noted increased symptoms in October 2009, April 2010, December 2010, December 2011, January 2012, and March 2102, culminating in severe decompensation in August 2012 (AR. 28-31). The August 2012 period of decompensation was under control by September 2012 and likely stemmed from plaintiff's failure to take her medication (AR. 31-32, 528).  The ALJ

acknowledged and discussed these periods of greater impairment, but still found the record supportive of overall clinical stability. As shown above and by the ALJ, this finding is supported by substantial evidence. The ALJ correctly determined that the objective medical evidence is not consistent with plaintiff's allegations of disabling mental impairments.

As plaintiff points out, the ALJ cannot rely on a lack of objective medical evidence alone to reject her testimony. *See Bunnell v. Sullivan, supra*, 947 F.2d at 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407). However, the ALJ also found plaintiff's activities inconsistent with her allegations of disability and "reflect the need for no greater restrictions than those set forth in the residual functional capacity" (AR. 33). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). Here, the ALJ found plaintiff's extensive activities inconsistent with her claims of disabling mental impairments (AR. 34-35).

Plaintiff reported she rarely left the house and did little other than watch television and sleep (AR. 264). However the record shows significant activity outside the house. As Dr. Anton noted, she was "sad and withdrawn but not inactive" (AR. 523). The ALJ gave several examples of plaintiff's many activities, including her capacity to work part-time for much of the period at issue, volunteer, attend to her own personal care and light house cleaning, go to yoga classes, walk by herself or with neighbors, go to several

support groups, and take a stained-glass class (AR. 33-34). The record supports

plaintiff's participation in all of these activities. Plaintiff often described attending yoga

twice a week and walking three times a week (AR 322, 324, 325, 332). She was working

part time as late as January 2012 (AR. 423). She volunteered in various capacities. In

October 2012 she assisted first graders (AR. 552). In November 2012, she inventoried

items for her church (AR. 523). She also testified that she volunteered an hour at the

schools and an hour at a school museum (AR. 51).

While these activities are not necessarily transferable to a work setting, they do

conflict with plaintiff's claims of spending much of her day lying down and her inability

to function due to problems with comprehension, concentration, feeling overwhelmed

and mood swing (AR. 53, 264). In listing these various activities, the ALJ gave specific,

clear and convincing evidence in support of the finding that plaintiff is not as limited as

she claims. The ALJ's credibility determination is affirmed.

(3)     Whether the ALJ properly evaluated the lay evidence.

Pursuant to the relevant federal regulations, there are "other sources," such as

friends and family members, who are defined as "other non-medical sources." *See* 20

C.F.R. § 404.1513 (d). An ALJ may disregard opinion evidence provided by "other

sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons

germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v.

Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Nguyen v. Chater*, 100 F.3d 1462,

1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is

disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

Plaintiff's husband, Tom Loewen, submitted a report about her functioning in October 2011 (AR. 225-32). According to Mr. Loewen, plaintiff she was excessively tired and unable to concentrate or make simple decisions (AR. 225).  She did not perform any household chores (AR. 227). But, she did go to yoga and have game night at home with friends (AR. 229). Mr. Loewen also stated plaintiff had "heavy mood swings" making interactions difficult (AR. 230).

The ALJ evaluated this function report of excessive tiredness, poor concentration, inability to make decisions, and difficulty getting along with others and was "not convinced that the claimant's functioning is more restricted than described in the residual functional capacity" (AR. 37). In support of this finding, the ALJ noted that plaintiff's periodic reports of fatigue and low energy did not significantly impact her functioning. Plaintiff could work, volunteer, go to yoga, and attend support groups (AR. 37).  As noted above, plaintiff was able to engage in all of these activities.  Therefore, plaintiff's own reported activities contradict the lay evidence. This conflict is a germane reason to reject Mr. Loewen's statement.  *See Bayliss v. Barnhart, supra*, 427 F.3d at 1218 (ALJ properly rejected the testimony of friends and family that was inconsistent with the record of plaintiff's activities and objective evidence in the record).

1    Plaintiff also contends the ALJ failed to discuss two email messages sent from Mr.

2    Loewen to Ms. Johansen in July and August 2012 describing plaintiff's decompensation

3    (Dkt. 10, p. 16). This information is largely duplicative of the medical records properly

4    evaluated and summarized by the ALJ (AR. 31-32). Furthermore, the ALJ discussed and

5    considered plaintiff's August 2012 decompensation. Any failure to explicitly discuss Mr.

6    Loewen's emails was inconsequential to the ultimate disability determination, and

7    therefore, harmless. *See Stout, supra,* 454 F.3d at 1054-55.

8

9    (4)    Whether the ALJ properly assessed plaintiff's residual functional capacity
              and based the step five finding on a residual functional capacity assessment

10            that did not include all of plaintiff's limitations.

11    Plaintiff asserts that the ALJ did not correctly formulate her RFC and, therefore,

12    based the step five finding on an incomplete RFC. This is merely a restatement of the

13    previously addressed arguments concerning the properly discounted evidence. As a

14    result, no error is established. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-6

15    (9th Cir. 2008).

16

17    (5)    Whether or not the new evidence that was submitted to the Appeals Council
              supports remand for a new hearing.

18    Plaintiff submitted a letter from her psychologist, Dr. Barry Anton, Ph.D., to the

19    Appeals Council (AR. 576-77). The Appeals Council denied review but incorporated the

20    evidence into the administrative record (AR. 1-5). "[W]hen a claimant submits evidence

21    for the first time to the Appeals Council, which considers that evidence in denying review

22    of the ALJ's decision, the new evidence is part of the administrative record, which the

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 16

district court *must* consider in determining whether [or not] the Commissioner's decision

is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60

(9th Cir. 2012) (emphasis added).

Dr. Anton's letter summarized plaintiff's treatment in his care from June 18, 2012

through the date of the letter, May 9, 2013.  (AR. 576-77).  In addition to her treatment

history, Dr. Anton noted plaintiff lacked motivation due to her depression (AR. 577). He

observed flattened or sad affect, as well as poor memory and concentration at her

appointments (AR. 577). He sees her every three to four weeks and she continues to

attend two support groups (AR. 577). He stated plaintiff stopped volunteering teaching

second graders (AR. 577). He concluded, "[s]he is conflicted about working, feeling that

she is not capable of doing so at this time" (AR. 577).

Plaintiff contends the letter from Dr. Anton "shows that there is a reasonable

possibility that the ALJ's determination would have been different had she considered

this evidence" (Dkt. 10, p. 19). However, the letter merely summarizes plaintiff's mental

health history and makes a few general comments about her symptoms as of May 2013

(AR. 577). While Dr. Anton noted plaintiff's feelings about returning to work, he failed

to give a medically supported opinion as to whether plaintiff was capable of working.

The letter provides little additional information and does not undermine the ALJ's

decision. Remand for consideration of this new evidence is unnecessary.

//

//

//

1

CONCLUSION

2
Based on these reasons and the relevant record, the Court **ORDERS** that this

3
matter be **AFFIRMED**.

4
**JUDGMENT** for defendant and the case should be closed.

5
Dated this 4th day of January, 2016.

6

7

8
J. Richard Creatura
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24